**Original filed 4/20/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SCOTT DAVIS,<br><br>                  Defendant,<br><br>     v.<br><br>THOMAS L. CAREY, Warden of California State Prison, Solano,<br><br>                Plaintiff. | Case Number C 04-1534 JF<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

## I. BACKGROUND[1]

On December 28, 1998, Petitioner Scott Davis ("Davis") was involved in an automobile accident that resulted in the deaths of four teenagers.  Davis was traveling in his black Acura on Highways 87, 85, and 101, driving recklessly and at high speeds.  On the southbound side of

---

[1]The following facts are taken from the opinion of the California Court of Appeal in *People v. Davis*, H022399 (Santa Clara County Super. Ct. No. 210456), unpublished.

1   Highway 101 near the Cochrane exit, Davis collided with another vehicle, a Chevy pickup truck,

2   driven by Nader Afshar.  Upon impact, the truck went through the center median, crossed over

3   into the northbound lanes, and crashed head-on into a Toyota.  A Honda then crashed into the

4   Chevy truck, and a minivan hit the Honda.  The four teenage passengers in the Toyota were

5   killed, and Ashfar and two others were hospitalized.  Davis left the scene.

6       The following morning, Davis called a friend, Pamela Bradt, and explained to her that he

7   had been in an accident and needed to be picked up.  He told Bradt that he fled the scene and had

8   been hiding in the bushes because he was "under the influence," did not have a driver's license,

9   and had outstanding warrants.  Davis also informed Bradt that he wanted to locate his car

10  because he had methamphetamine hidden in the engine compartment and wanted to retrieve it.

11  Bradt contacted the Highway Patrol to report Davis's call.  Later that day police officers arrested

12  Davis at a home after he had tried to escape and then struggled with the officers.  Davis tested

13  positively for methamphetamine.

14      Prior to trial, the state trial court held in limine proceedings to determine the admissibility

15  of five prior acts of driving misconduct by Davis: a 1991 conviction for driving under the

16  influence of methamphetamine and cocaine when Davis was stopped for speeding, drove away

17  from an officer, and crashed into a tree; a 1996 incident in which Davis drove through a

18  crosswalk and hit a high school student; a 1998 conviction for being under the influence of a

19  stimulant when Davis fishtailed out of a parking lot at night without lights on; a 1998 incident in

20  which Davis had used methamphetamine and hit a deer in the road after passengers had

21  expressed concern about his driving; and a 1998 incident in which Davis was driving in a

22  residential area, tried to pass a car on the right, and crashed into the car and a tree.  Respondent

23  argued that the evidence was relevant to (1) Davis's mental state for purposes of the implied

24  malice element of murder (knowledge and appreciation of the risk of dangerous driving), and (2)

25  the objective standard for lesser-included vehicular manslaughter charges.

26      Davis challenged the admission of the prior acts, arguing that they were not sufficiently

27  similar to the acts alleged in the charged offenses to prove whether he had acted with implied

28  malice.  The trial court overruled Davis's objections and allowed the evidence to be presented at

2

1    trial.

2           Davis also sought an order to bar testimony from Pamela Bradt with respect to Davis's

3    stay in prison during the 1980's.  The trial court issued an order barring such testimony.  At trial,

4    however, during Bradt's direct testimony, the prosecutor asked, "[d]id you see [Davis] more or

5    less on a regular basis the entire time you knew him or was it sporadic?"  Bradt replied, "[n]o, I

6    seen him quite often when he was in prison, and out when he got out of prison back in the '80s,

7    and then I didn't see him for about seven or eight years when I was in recovery."  After a sidebar

8    conference, the trial court ordered the statement stricken from the record and instructed the jury

9    to disregard Bradt's testimony concerning prison.  Davis later moved for a mistrial, and the court

10   denied the motion.

11          On August 23, 2000 a Santa Clara Superior Court jury found Davis guilty of four counts

12   of second degree murder in violation of Cal. Penal Code § 187(b); three counts of reckless

13   driving causing injury with a specified prior in violation of Cal. Vehicle Code § 23104(b); three

14   counts of methamphetamine-related offenses (transportation, possession, and being under the

15   influence) in violation of Health and Safety Code §§ 11379(a), 11377(a) and 11550(a),

16   respectively; resisting an officer in violation of Cal. Penal Code § 69; battery in violation of Cal.

17   Penal Code §§ 242, 243(b); and driving with a suspended license in violation of Cal. Vehicle

18   Code § 14601.1.  Davis also was found to have suffered a prior "strike" conviction for first

19   degree burglary within the meaning of Cal. Penal Code § 667(a),(b)-(i).  The trial court

20   sentenced Davis to consecutive terms of thirty years to life for the four counts of second-degree

21   murder, which were consecutive to a determinate term of sixteen years, and four months on the

22   remaining counts of conviction.

23          Direct Appeal:

24          Davis filed a direct appeal to the California Court of Appeal, Sixth Appellate District,

25   raising the following arguments:

26          (1) the court erred in admitting evidence of prior incidents; (2) the court erred in
            admitting Ms. Bradt's testimony that Mr. Davis admitted being under the
27          influence because there was no corpus delicti; and (3) the prosecutor's failure to
            warn Bradt to avoid stating appellant had been in prison was a misconduct and the
28          court's denial of a mistrial when the comment was made was error.

                                                    3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Appellant Br.).   The Court of Appeal affirmed Davis's convictions in an unpublished opinion filed on November 7, 2002.  The California Supreme Court denied Davis's petition for review on January 22, 2003.

<u>Habeas Petition</u>:

Davis filed the instant habeas petition in this Court on April 20, 2004, asserting that the trial court violated his rights to due process and a fair trial under the Fifth and Fourteenth Amendments by (1) admitting evidence of his prior acts of driving misconduct and (2) denying his motion for a mistrial after the jury heard testimony regarding his prior imprisonment.  The matter having been fully briefed and all of the parties' arguments having been considered, the Court concludes that the petition is without merit and should be denied.[2]

## II. STANDARD OF REVIEW

This Court will entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State Court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court reaches a decision different from that reached by the Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court's

---

[2]The matter was taken under submission without oral argument upon completion of the briefing pursuant to Civ. L. R. 2254-8.

Case No. C-04-1534-JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(JFEX2)

decision involves an "unreasonable application" of clearly established federal law if the state

court identifies the correct governing legal principle but unreasonably applies that principle to

the facts of the defendant's case. *Id.* "[A] federal habeas court may not issue the writ simply

because the court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." *Id.* at 411.

A state court's decision is based upon "an unreasonable determination of the facts in light

of the evidence presented" when the state court fails to consider and weigh highly probative,

relevant evidence, central to the defendant's claim, that was properly presented and made part of

the state-court record. *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004)  This Court must

presume correct any determination of a factual issue made by a state court unless the defendant

rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

**A.    Admission of Evidence of Other Crimes.**

Davis first claims that the state trial court deprived him of due process by admitting

evidence of five prior acts of his driving misconduct**.** Davis contends that the prior acts were not

sufficiently similar to the charged offense to justify the admission of any evidence with respect

to them at trial under Cal. Evid. Code § 1101 and that the trial court abused its discretion in

admitting the evidence under Cal. Evid. Code § 352.  He further argues that allowing the jury to

consider his prior acts was improper because the evidence gave rise to an impermissible

inference that he "had a character trait of having a propensity to drive badly."

The last reasoned state court decision on this issue is the decision of the California Court

of Appeal dated November 7, 2002.[3]  The Court of Appeal observed that, "on appeal, the trial

court's determination of whether to admit prior conduct evidence under Evidence Code section

---

[3] This Court looks to the decision of the highest court to address the merits in determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

1   1101, 'being essentially a determination of relevance, is reviewed for abuse of discretion.

2   [Citations] [¶] . . . [¶] A court abuses its discretion when its ruling 'falls outside the bounds of

3   reason.' [Citation]'" (citing *People v. Kipp*, 18 Cal.4th 349, 369, 371 (1998)).  The court further

4   explained that absent a clear showing that the trial court's determination was irrational or

5   arbitrary, its decision should not be set aside on review.  (Citing *People v. Preyer*, 164

6   Cal.App.3d 568, 573-74 (1985)).  The court found that the prior acts were purposely offered to

7   show Davis's knowledge that certain conduct is life threatening in order prove the required

8   element of implied malice in connection with a charge of second degree murder.  The appellate

9   court concluded that the trial court's decision to admit the evidence was a rational exercise of its

10  discretion, and that the prejudicial impact of the evidence did not outweigh its probative value.

11  The balancing of prejudice and probative value primarily is a task for the trial court in its

12  discretion, and absent a clear showing of abuse, its determination will be upheld.  *See People v.*

13  *Sassounian*, 182 Cal.App.3d 361, 402 (1986).

14          Davis asserts that the appropriate standard for reviewing the admission of evidence in

15  this case is not abuse of discretion but rather whether the prosecution can establish beyond a

16  reasonable doubt that the error was harmless.  *See Chapman v. California*, 386 U.S. 18, 24

17  (1967).  This assertion is incorrect.  In *Chapman*, the trial court relied on a then-existing

18  provision in the California Constitution that allowed the prosecution to comment on defendants'

19  failure to testify and to instruct the jury to draw inferences of defendants' guilt from the lack of

20  testimony.  *Id.* at 19.  After the trial, but prior to appeal, the United States Supreme Court held

21  that the provision in question resulted in an unconstitutional deprivation of the rights afforded

22  under the Fifth and Fourteenth Amendments. *Griffin v. State of California*, 380 U.S. 609, 615

23  (1965).  In light of this holding, the defendants challenged their convictions on the grounds that

24  allowing comment on their failure to testify was not harmless error because they suffered a

25  violation of their constitutional rights.  *Chapman*, 386 U.S. at 20.  The Supreme Court held that

26  "before a federal constitutional error can be held harmless, the court must be able to declare a

27  belief that it was harmless beyond a reasonable doubt." *Id.* at 24.

28          By its terms, *Chapman* presupposes a federal constitutional error, and sets forth the

6

1    standard to apply in order to determine whether that error warrants a reversal.  In this case,

2    however, the issue addressed by the state appellate court was not whether an error of

3    constitutional dimension was harmless, but whether there was error at all.  The court properly

4    noted that unless the application of a state evidentiary rule offends a fundamental principle of

5    justice or is so prejudicial as to render the trial fundamentally unfair, there can be no due process

6    violation.

7         Davis also argues that the state appellate court's determination was unreasonable.

8    However, that court's determination that because the prior incidents involved Davis "causing or

9    being involved in an accident, reckless incident, or injury to a pedestrian while driving," it was

10   not irrational to find that each act was "highly relevant to show that defendant knew that reckless

11   driving endangered life," *Id.* was entirely reasonable.  Nor was it unreasonable for the court to

12   conclude that the prior acts evidence had significant probative value, or that it was well within

13   the trial court's discretion to decide whether that probative value outweighed any prejudicial

14   effect.  *See Sassounian*, 182 Cal.App.3d at 402.

15        The Court of Appeal focused particularly on the prejudicial effect of the incident

16   involving the high school student.  Davis argues that this incident was not sufficiently similar to

17   the charged offense to be probative, and was so prejudicial that its exclusion was warranted. The

18   appellate court looked to *People v. Olguin*, 31 Cal.App.4th 1355, 1369 (1994), which stated that

19   "[e]vidence code section 352 is designed for situations in which evidence of little evidentiary

20   impact evokes an emotional bias."  The court concluded that any emotional bias in this case was

21   insignificant because "the high school incident was considerably less inflammatory than the

22   evidence of the charged offenses."

23        Relying upon *Michelson v. United States*, 335 U.S. 469, 475-76 (1948), Davis argues that

24   evidence of his bad character should have been excluded, not because it was irrelevant, but

25   because it would prejudice the jury.  He asserts that the evidence of the uncharged high school

26   incident caused the jury to prejudge him, thus denying him a fair trial.  However, on habeas

27   review this Court does not apply the same standard as the state appellate court.  "[A] federal

28   court cannot disturb on due process grounds a state court's decision to admit prior bad acts

7

1   evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the

2   trial fundamentally unfair." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  There is no

3   indication here that the state appellate court's decision to defer to the trial court's discretion was

4   so "arbitrary or prejudicial" that it amounted to a violation of Davis' due process rights.

5   **B.     Denial of Motion for a Mistrial Based on Prosecutorial Misconduct.**

6           Davis's second claim is that the trial court violated his due process rights by denying his

7   motion for a mistrial after Ms. Bradt, in violation of the trial court's in limine ruling, made

8   reference to the fact that Davis had been in prison.  Davis argues that the prosecution's failure to

9   warn Bradt against mentioning the fact that he had been in prison amounted to prosecutorial

10  misconduct.  Davis also contends that such misconduct violated his right to due process because

11  the admission of the evidence prejudiced the jury.   The state appellate court concluded that Davis

12  failed to establish prosecutorial misconduct and that any prejudice that might have been caused

13  by the testimony was cured by the trial court's admonition to the jury.

14          Pursuant to controlling Supreme Court authority, the sole inquiry in determining whether

15  alleged prosecutorial misconduct violated a defendant's federal constitutional rights is whether

16  the prosecutors' comments "so infected the trial with unfairness as to make the resulting

17  conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing

18  *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The appropriate standard of review is the "the

19  narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S.

20  at 181 citing *Donnelly*, 416 U.S. at 642.  In finding that the trial court did not unreasonably deny

21  Davis' motion for a mistrial, the state appellate court looked to the trial court's observations and

22  reactions to assess the impact of Bradt's testimony on the jury.  The trial court was not convinced

23  that the jury was surprised by the prison testimony and further held that its instruction to the jury

24  to disregard the testimony was sufficient to prevent undue prejudice.  The Court of Appeal

25  pointed out that the jury already knew from other evidence that Davis had a serious criminal

26  background, and Davis himself stated in a recorded police interview played at trial that he had

27  been arrested and locked up many times.  Based on these factors, the court held that the trial court

28  reasonably could have determined that any prejudice resulting from Bradt's testimony could be

8

1  cured adequately by the admonition.

2        This Court finds no support in the record for Davis's contention that Bradt's testimony

3  was so prejudicial as to warrant a finding that the testimony "so infected the trial with unfairness

4  as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citing

5  *Donnelly*, 416 U.S. 637).   Davis fails to show that the denial of his motion for a mistrial "resulted

6  in a decision that was contrary to, or involved an unreasonable application of, clearly established

7  Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).

8

9                                **III. ORDER**

10       Based upon the foregoing discussion, the Court finds and concludes that Petitioner has failed

11 to show any violation of his due process rights under the Fourteenth Amendment.   Accordingly,

12 the Petition for Writ of Habeas Corpus is DENIED.  The Clerk shall enter judgment and close the

13 file.

14

15

16

17 DATED: _____4/20/07_____

18

19                                                            _____

20                                                            JEREMY FOGEL
                                                              United States District Judge

21

22

23

24

25

26

27

28

                                        9

1

2

Copies of Order have been served upon the following persons:

3

Counsel for Petitioner:

4

Dennis P. Riordan
dennis@Riordan-Horgan.com

5

6

Counsel for Respondent:

7

Peggy S. Ruffra
peggy.ruffra@doj.ca.gov, DocketingSFAWT@doj.ca.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

Case No. C-04-1534-JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(JFEX2)